AO 91 (Rev. 11/82)            CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>**GENARO AGUAYO-DELGADO and BERTHA AGUAYO.** | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br>**SA 19-500M** |

Complaint for violation of Title 21, United States Code, Section, 841(a)(1), (b)(1)(B)(viii)

| NAME OF MAGISTRATE JUDGE<br>HONORABLE JOHN D. EARLY | UNITED STATES MAGISTRATE JUDGE | LOCATION<br>Santa Ana, California |
|---|---|---|
| DATES OF OFFENSES<br>May 21, 2019 | PLACE OF OFFENSES<br>Orange County | ADDRESS OF ACCUSED (IF KNOWN) |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

On or about May 21, 2019, in Orange County, within the Central District of California, defendants **GENARO AGUAYO-DELGADO and BERTHA AGUAYO**, knowingly and intentionally possessed methamphetamine with the intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B)(viii).

[LODGED stamp: 2019 JUN 25 AM 11:06 CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. SANTA ANA BY]

[FILED stamp: JUN 25 2019 CLERK U.S. DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA BY DEPUTY]

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint.)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>**FARSHID HASHEMPOUR**    /S/<br>OFFICIAL TITLE<br>Task Force Officer, Federal Bureau of Investigation |
|---|---|

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[(1)]<br><br>JOHN D. EARLY | DATE<br>June 25, 2019 |
|---|---|

(1) See Federal Rules of Criminal Procedure 3 and 54

AUSA D.Ahn;ccf     [Warrants]

# **A F F I D A V I T**

I, Farshid Hashempour, being duly sworn, hereby declare and state as follows:

## I. INTRODUCTION

1. I am a Detective with the Santa Ana Police Department ("SAPD") and also a federally deputized Task Force Officer ("TFO") presently working with the Federal Bureau of Investigation ("FBI"). As a TFO with the FBI, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. I am assigned to the Orange County Violent Gang Task Force ("OCVGTF"). The OCVGTF is composed of federal and local law enforcement agencies, including, but not limited to, the FBI, the Internal Revenue Service-Criminal Investigations, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, the SAPD, and detectives from the Anaheim Police Department. The OCVGTF is responsible for, among other things, investigating violations of federal law committed by criminal street gangs, the Mexican Mafia, and other violent criminal organizations in Orange County. Prior to this assignment with the FBI, I was a SAPD Police Officer and have been so employed for approximately eighteen years.

3. I have specialized training and experience in investigations of narcotics trafficking and criminal street gangs. During my tenure as a Police Officer, as well as an FBI

1

TFO, I have conducted and participated in numerous investigations of criminal activity, specifically including narcotics trafficking and violent offenses committed by street gangs. Since joining the OCVGTF in 2010, I have specialized in investigations of the Mexican Mafia and its subordinate gangs in Orange County. As part of these investigations, I have also learned about the drug trafficking organizations that supply street gangs with illegal narcotics.

## II. **PURPOSE OF AFFIDAVIT**

4. This affidavit is made in support of a criminal complaint and arrest warrants against GENARO AGUAYO-DELGADO ("DELGADO") and BERTHA AGUAYO ("AGUAYO") for a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii): Possession with Intent to Distribute Methamphetamine.

5. The facts set forth in this affidavit are based upon information obtained from other law enforcement personnel, my personal knowledge, and my training and experience. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. **SUMMARY OF PROBABLE CAUSE**

6. On or about April 11, 2019, the Costa Mesa Police Department ("CMPD") used a Confidential Informant ("CI") to

2

purchase cocaine from a known narcotics trafficker, later identified as GENARO AGUAYO-DELGADO ("DELGADO"). The CI called DELGADO on his cellular phone and arranged a controlled purchase of twenty dollars' worth of cocaine. DELGADO later informed the CI that he would not make it, but would send his wife instead. CMPD Detectives conducted a surveillance on the meet location and observed a female, later identified as BERTHA AGUAYO, arrive at the location and sell cocaine to the informant.

7.   April 12, 2019, a Costa Mesa Police Department Detective, while working in an undercover capacity in the Special Investigations Unit, called DELGADO's phone number and spoke to an unknown Male Subject in Spanish. The Undercover Detective asked the Male Subject if he was willing to sell him twenty dollars' worth of cocaine. The Male Subject agreed and said he would meet with the Undercover Detective at a shopping center in Costa Mesa, California, after he got off of work. Based on previous information CMPD had obtained from their CI, they were able to identify DELGADO's home address as well as the vehicles that were registered in his name. At approximately 3:05 p.m., CMPD Detectives set up a surveillance on DELGADO's residence, located at 730 James Street #C, Costa Mesa, California, and watched as DELGADO arrived home in one of the vehicles registered in his name. DELGADO was then observed walking to the complex located at 730 James Street, Costa Mesa, California.

8.   About two minutes later, DELGADO was observed walking back to his vehicle. DELGADO was followed from his residence to

the shopping center where he met with the CMPD Undercover Detective. After parking his vehicle, DELGADO walked up to the CMPD Undercover Detective and handed him a small white plastic baggie containing a white powdery substance similar in consistency to cocaine. The Undercover Detective handed DELGADO a twenty dollar bill while asking DELGADO if he had any more cocaine. DELGADO stated that he did not but that he also sold methamphetamine. On May 17, 2019, the CMPD Undercover Detective who purchased the cocaine from DELGADO authored a search warrant for DELGADO's residence, vehicle, and phone.

9. On May 21, 2019, CMPD Detectives conducted a surveillance on DELGADO's residence. At approximately 3:15 p.m., DELGADO was observed leaving his apartment with BERTHA AGUAYO. A traffic stop was conducted on the vehicle occupied by DELGADO and AGUAYO. CMPD Detectives obtained consent to search AGUAYO's purse, where they located a small bindle of a substance believed to be methamphetamine. Detectives also found approximately $3,349 dollars in United States currency in AGUAYO's purse. At the scene of the traffic stop, AGUAYO denied that the suspected methamphetamine found in her purse belonged to her. AGUAYO also denied being involved in narcotic sales.

10. CMPD Detectives then went to DELGADO and AGUAYO's apartment on James Street and served the search warrant for the residence. As CMPD Personnel entered the apartment, Genaro Ramses Aguayo, identified as DELGADO and AGUAYO's 16 year old son, attempted to flush foil that was later found to contain a substance believed to be cocaine. A search of the one bedroom

4

apartment revealed a substance similar in consistency to crystal methamphetamine in a white grocery bag found on top of a dresser in the bedroom closet.  Inside the same closet, CMPD Detectives found a large plastic wrapper inside a glass jar containing a substance resembling cocaine.  In close proximity to the glass jar were three zippered bags or pouches containing a total of $12,877 in United States currency.  The total weight of the substance believed to be methamphetamine found at the residence was 847 grams.  The total weight of the substance believed to be cocaine found at the residence was 127.38 grams.  DELGADO, AGUAYO, and their son, Ramses, were arrested for possession of a controlled substances for sales and transportation.

## IV. STATEMENT OF PROBABLE CAUSE

11.  I have reviewed the police report and search warrants prepared by CMPD Detective J. Santibanez covering the operations that led to the May 21, 2019, arrest of DELGADO and AGUAYO. Based on my review of the search warrants and reports, I have learned the following facts:

   a.  On or about April 11, 2019, the Costa Mesa Police Department utilized a Confidential Informant ("CI") to contact a narcotics supplier that he/she knew was engaged in sales of methamphetamine and cocaine.  The CI called the individual, identified as GENARO AGUAYO DELGADO, while in the presence of CMPD Undercover Detective Santibanez in an attempt to purchase cocaine.  DELGADO told the CI he was unable to meet, but would send someone to deliver the cocaine.  Later the same day,

members of CMPD's Special Investigation Unit ("SIU") established a surveillance near the CI's residence.

      b.    While on surveillance, CMPD Detective Fricke observed a White Dodge Charger, bearing a California License Plate number 7PMV642, slowly drive down the CI's street. CMPD Surveillance Detectives observed that the White Dodge Charger was being driven by an unknown female. CMPD maintained surveillance on the vehicle and watched as the CI exited his/her residence and approached the White Dodge Charger. The CMPD Detectives observed a hand to hand transaction take place between the CI and the female driver of the White Dodge Charger. CMPD Detectives handling the surveillance then followed the White Dodge Charger to the alley that parallels 730 James Street in Costa Mesa, where DELGADO is known to live. CMPD Detective J. Santibanez met with the CI immediately after the transaction. The CI handed Detective Santibanez a plastic baggie containing a white substance resembling cocaine, which was later found to weigh 1.09 grams. Detective Santibanez later booked the plastic baggie and its contents into evidence at the Costa Mesa Police Department. Detective Santibanez debriefed the CI, who told him that the female driver who delivered the suspected cocaine was DELGADO's girlfriend or wife. A records check of the California license plate on the White Dodge Charger revealed that it was registered to DELGADO, but at a different address on 16th Street in Costa Mesa, California.

      c.    Detective Santibanez conducted a records check on DELGADO and was able to find his California Department of Motor

Vehicle Driver's License photograph. Detective Santibanez also found a 2006 Nissan Armada, bearing a California license plate number 6ZZK062, registered to DELGADO; however, the address listed on the registration for the Nissan was 730 James Street, Unit #C, Costa Mesa, California.

       d. On April 12, 2019, at approximately 1:36 p.m., Detective Santibanez called a phone number (949-315-6663) believed to belong to DELGADO, which was provided by the CI who had purchased the cocaine from the woman believed to be DELGADO's girlfriend or wife on April 10, 2019. During the phone call, Detective Santibanez spoke to a male subject in Spanish and told him that he was referred by a person who "lives on Miner Street." Detective Santibanez asked the male subject if he would sell him twenty dollars' worth of cocaine. The male agreed to meet Detective Santibanez after he got off of work in the parking lot of the shopping center at 2200 Harbor Boulevard, Costa Mesa, California. At about 2:25 p.m., Detective Santibanez called the number again, but did not speak to anyone. Detective Santibanez texted the number to inform the person he had spoken to earlier that he had arrived at the shopping center. Detective Santibanez then received a text response that advised Detective Santibanez that he would call back after his meeting. At about 3:05 p.m., Detective Santibanez sent a text message to the same number and asked the subject if he was going to meet with him. The person responded that he was on his way home from work.

e.  While Detective Santibanez was texting the male subject, CMPD Detective Fricke drove to the area of 730 James Street where he observed DELGADO drive up and park his gray Nissan Armada. DELGADO then exited his vehicle and walked towards the complex at 730 James Street, described as a multi-unit apartment building. Approximately two minutes later, Detective Fricke watched as DELGADO returned to the Nissan Armada and drove away from his complex. As DELGADO drove away from his residence, Detective Santibanez received a call from the number believed to belong to DELGADO, which he had been corresponding with throughout the day. DELGADO informed Detective Santibanez that he was on his way to meet with him.

f.  A few minutes later, Detective Santibanez saw DELGADO's vehicle as it arrived in the parking lot. The Nissan Armada parked directly next to Detective Santibanez's undercover vehicle. Detective Santibanez identified the driver of the Nissan Armada as DELGADO, based on DELGADO's California Driver License picture that Detective Santibanez had reviewed after conducting a records check on the registered owner of the White Dodge Charger involved in the controlled buy with the CI. DELGADO exited the Nissan Armada and approached Detective Santibanez's driver's side window. DELGADO handed Detective Santibanez a small white plastic baggie containing a white powdery substance resembling cocaine. Detective Santibanez handed DELGADO twenty dollars in United States currency and asked DELGADO if he had any more cocaine. DELGADO said he did not have any more cocaine, but informed Detective Santibanez

that he also sold methamphetamine.  Detective Santibanez concluded the transaction by telling DELGADO that he would call him in the future to order more cocaine.

        g.    Detective Santibanez returned to the Costa Mesa Police Department, where he weighed the white plastic baggie and its content that DELGADO had delivered to him.  Detective Santibanez determined that the total weight of the plastic bindle and its content was .57 gross grams, which he then booked into evidence at the Costa Mesa Police Department.

        h.    In May 2019, Detective Santibanez attempted to purchase cocaine from DELGADO on two other occasions.  The first time Detective Santibanez called, DELGADO stated he would call him back but never returned the phone call.  During the second call, DELGADO told Detective Santibanez that he had not picked up any more narcotics since the person who had referred Detective Santibanez had been arrested.  Detective Santibanez confirmed that the person DELGADO was referring to was the CI, who had since been arrested by Immigration and Customs Enforcement.  Detective Santibanez authored a search warrant to search DELGADO's person, residence at 730 James Street, Unit #C, Costa Mesa, California, his vehicles, and the cellular phone he used to arrange the cocaine transaction on April 12, 2019.  On May 17, 2019, the search warrant was signed by the Honorable Judge Recio from the West Justice Center Superior Court.

        i.    On May 21, 2019, at approximately 3:00 p.m., members of CMPD's Special Investigation Unit ("SIU") established a surveillance on DELGADO's residence, located at 730 James

9

Street, Unit #C, Costa Mesa, California.  At about 3:15 p.m., Detective Sergeant McKinley observed DELGADO and a female, identified as AGUAYO, walking out of Unit #C and approach the White Dodge Charger.  Detective Sergeant McKinley watched as DELGADO got into the driver's side of the White Dodge Charger while AGUAYO entered the vehicle through the right front passenger door.  The White Dodge Charger was followed to the area of 1996 Pomona Avenue, Costa Mesa, California, where a traffic stop was conducted on the vehicle.  Both DELGADO and AGUAYO were taken out of the vehicle.  Neither DELGADO nor AGUAYO were handcuffed as they waited outside the vehicle.

    j. During an initial inspection of the interior of the vehicle, Detective Santibanez observed a purse on top of the passenger seat where AGUAYO was seated.  Detective Santibanez asked AGUAYO in Spanish if the purse belonged to her.  AGUAYO affirmed and also gave Detective Santibanez consent to search the purse, which revealed a substance believed to be methamphetamine in the interior pocket of the purse.  As Detective Santibanez continued the search of the purse, he found approximately $3,349 in various denominations of United States currency and a document from the California Franchise Tax Board issued in the name of BERTHA AGUAYO and GENARO AGUAYO-DELGADO.  Inside the vehicle, Detective Santibanez found three cellular phones, which AGUAYO stated all belonged to DELGADO.  AGUAYO denied selling narcotics and stated the substance believed to be methamphetamine did not belong to her.  AGUAYO said the money found in her purse was money she had earned from cleaning

houses.  Prior to the conclusion of the interview, AGUAYO gave Detective Santibanez consent to search her apartment.

k.   While still at the scene of the traffic stop, Detective Santibanez then spoke to DELGADO, who stated that the money found in AGUAYO's purse belonged to him and was money he received from his income tax return.  DELGADO denied knowledge of the suspected methamphetamine found in AGUAYO's purse and refused to provide Detective Santibanez with the address to his residence.  At his request, DELGADO's vehicle was secured at the scene before DELGADO and AGUAYO were arrested and transported to the jail facility located at the Costa Mesa Police Department.

l.   Members of CMPD SIU then drove to the 730 James Street, Unit #C, where they knocked on the front door to the residence to execute the search warrant.  Upon entry into the apartment, Detective Fricke saw an 11 year old child, later identified as Nathan Aguayo, run to the bathroom.  Detective Fricke forced open the locked bathroom door and saw Nathan Aguayo urinating and then attempting to flush a plastic bindle wrapped in foil down the toilet.  The foil wrapped bindle did not flush and floated on top of the water.  The item was later opened and found to contain approximately 27.59 grams of a substance resembling cocaine.  The SIU Detectives detained three of AGUAYO and DELGADO's four children and had them sit outside of the apartment while they conducted their search.

m.   CMPD SIU then collectively searched the apartment, which was described as having one bedroom, one bathroom, a small kitchen, and a small living room.  Upon

initial inspection, it appeared that AGUAYO, DELGADO, and their four children all slept in the one bedroom.  During a search of the bedroom closet, Detectives found three large plastic zip-lock bags on top of a dresser, which contained a white crystalline substance resembling methamphetamine.  The three plastic zip-lock bags weighed 442 grams, 223 grams and 182 grams, respectively.  At the other end of the closet, a glass jar was located on top of some clothing.  Inside the jar, was a large plastic wrapper containing approximately 87 grams of a substance believed to be cocaine.  Detective Santibanez indicated that the closet where the narcotics were found contained adult male, adult female, and children's clothing.  In close proximity to the glass jar were three zippered bags or pouches containing a total of $12,877 in United States currency.

       n.   CMPD Detectives believed that Genaro Ramses Aguayo ("Ramses") was responsible for attempting to flush the foil wrapped bindle down the toilet, and not Nathan Aguayo. When Detectives spoke to Nathan Aguayo, he did not know what they were referring to when asked about the foil wrapped bindle. Nathan Aguayo appeared to have an urgent need to urinate and ran to the bathroom, which is what Detective Fricke observed when he followed Nathan to the bathroom.  Just prior to Nathan running to the bathroom, Ramses had thrown the bindle in the toilet when the CMPD Detectives first arrived at the door, but did not have time to flush it.

       o.   As a result, Ramses was transported to the Costa Mesa Police Department, where he was placed in a juvenile

holding cell. While inside the juvenile holding cell, Detective Santibanez Mirandized and interviewed Nathan's older brother, Ramses. Ramses understood his rights and admitted to taking the cocaine off of the kitchen table and throwing it in the toilet when he saw police arrive at his apartment. Ramses also admitted to that his mother and father, AGUAYO and DELGADO, have been selling narcotics for approximately four or five years. Ramses further stated that he would see his parents "sell to people." Ramses said his father, DELGADO, told him they were involved in narcotic sales because they needed the money.

  p. While at the jail, and using his department issued Miranda card, Detective Santibanez read AGUAYO her Miranda Rights in Spanish. AGUAYO denied living in the apartment on James Street and said that the methamphetamine found in the apartment did not belong to her. AGUAYO stated that she was recently paid $1,600 by one of her employers who owed her money. When advised that the total amount of money found in her purse was greater than $1,600, AGUAYO did not have an explanation.

  q. Detective Santibanez then read DELGADO his Miranda Rights in Spanish from his aforementioned department issued card. DELGADO understood his rights and admitted to recently moving to 730 James Street, Unit #C, Costa Mesa, California with AGUAYO and his four children. During his interview, DELGADO reiterated that money found in AGUAYO's purse was money he received from his income tax return. DELGADO denied knowledge of the methamphetamine found in the apartment

and stated, "I don't know who put it in the room. Who put it in there?" DELGADO also denied selling drugs stating, "I don't sell drugs."

    r.  CMPD Detective Santibanez later searched DELGADO's Apple iPhone, which was listed on Detective Santibanez's search warrant. A search of DELGADO's phone revealed several text messages in Spanish, which indicated that DELGADO was engaged in narcotic sales. Detective Santibanez, who is fluent in Spanish, translated a few of the text message exchanges from DELGADO's phone:

> Saturday, March 16, 2019 at 5:40 p.m.
> 949-394-1381: They need 40 of the strong stuff
> DELGADO: Of snow or window
> 949-394-1381: Window

> Thursday, May 16, 2019 at 7:23 p.m.
> 424-222-0846: Cousin do you have another half "1"
> DELGADO: Yes, the strong one
> 424-222-0846: Yes.

    s.  Based on his training and experience, Detective Santibanez recognized the term "snow" as common street terminology referring to cocaine, while "glass" and "window" are commonly used to refer to methamphetamine. Detective Santibanez also identified the term "half" as a common word used for a unit of measurement as it applies to narcotics.

    t.  Due to the Costa Mesa Police Department's policy prohibiting the presumptive testing of narcotics, none of the items seized from the apartment were field tested. The cocaine and methamphetamine packages were later obtained from Detective Santibanez and sent to the DEA Southwest Lab for quantitative

14

and qualitative testing. Upon completion of the tests, the exhibits will be placed into evidence at the FBI's Los Angeles Field Office. However, based on DELGADO's previous sale of cocaine to the CI, his admission to selling methamphetamine and cocaine, his use of coded language above, the statement from Ramses saying that his father and mother sell narcotics, as well as my training and experience, which includes observing methamphetamine and cocaine, I submit that there is probable cause to believe that the substances obtained from the apartment are in fact methamphetamine and cocaine.

## V.  CONCLUSION

12. For all the reasons described above, there is probable cause to believe that DELGADO and AGUAYO have committed a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii): Possession with Intent to Distribute Methamphetamine.

/S/
_____
FARSHID HASHEMPOUR
Task Force Officer, FBI
Detective, SAPD

Subscribed to and sworn before me this 25th day of June 2019.

**JOHN D. EARLY**
_____
UNITED STATES MAGISTRATE JUDGE

15